OPINION.
Davis, J.,
delivered the opinion of the court:
The Act of July 13, 1866, appropriated $146,000 for the erection of a fire-proof building in Philadelphia. (14 Stat. L., 92.) The contract for the construction of the building was awarded to the claimants, and a written contract therefor was made in the form required by law.
During the progress of the work sundry changes were made in the drawings and specifications by-the defendants? agents, and the work was done in accordance with the changes. After it was completed the claimants, brought suit to recover for the extra work.
There was a large amount of testimony introduced bearing upon its value. Among the documents in the case was a report from Mr. Frazer, the supervising architect, charged with the construction of the building, in which he referred in detail to the items of extra work, and estimated them at $34,225.14. This report, upon principles of evidence which this court has invariably adhered to, was not,admissible as proof of the results reached by Frazer. There was also in the case testimony from Frazer and other experts as to the worth of the extra.s. , In his evidence Frazer'fixed their value at a larger sum than he had stated in his report, and explained wherein the difference consisted, and why he had originally estimated them at the smaller sum. The court gave judgment for the exact sum named in Frazer’s letter. There is in the record no evidence on which that particular sum could apparently be based except the statement in that letter.
*738 The claimant was then in arrears to his men, and needed the money, and was paid and accepted the amount of the judgment. He then went before Congress, alleging that there was an error of fact in the judgment — that the court intended to give him the amount of Frazer’s estimate as stated in the evidence, and that by mistake it took the estimate in the letter.
The matter was brought before successive Congresses without result until the death of Judge Milligan, who had given the opinion. Chief Justice Casey meanwhile had retired, and as the court which had rendered the judgment was rapidly changing, the claimant apparently thought proper to obtain and lay before the committee the views of Chief Justice Casey as to the merits of his request. Finally, a House committee reported a bill in his favor, accompanying it with a written report, which we shall consider later.
The bill as enacted by Congress reads as follows:
AN ACT for the relief of Albert Grant.
Be it enacted, Sre., That the Court of Claims he, and is hereby, directed to reopen and readjudicate the case of Albert Grant and Darius Jackson (doing business as A. Grant and Company) upon the evidence heretofore submitted to the said court in said cause (Fifth Court of Claims Reports, page eighty), and if said court in such readjudication shall ñnd from such evidence that the court gave judgment for a different sum than the evidence sustains or the court intended, it shall correct such error and adjudge to the said Albert Grant such additional sum in said cause as the evidence shall justify, not to exceed fourteen thousand and sixteen dollars and twenty-nine cents; and the amount by readjudication in favor of the said Albert Grant shall be a part of the original judgment in the cause recorded in the Fifth Court of Claims Reports, page eighty. (January 5, 1883, ch. 10, 22 St. L. — )
The act is as remarkable for wbat it omits as for what it directs. While directing us on one line “to reopen and read-judicate the case” upon the former evidence, on the next line it deprives us of the power of a- general readjudication, and orders us only to inquire whether there was an error in the Government’s favor. Still further, it not only authorizes us to inquire whether the evidence supported the former judgment in this error, but it also confers upon us the remarkable power to determine whether the court which gave the judgment in 1873 intended to give a different judgment. Thus the act, in fact, if not in form, directs us in our readjudication to base our results, not upon our own conclusion from the evidence, but *739 upon our opinion as to what the court, as constituted in 1873, intended to do.
In the revolutions of time no judge who took part in the judgment in 1873 takes part in the judgment in 1883. Death has taken away Chief Justice Casey and Judges Milligan and Peck, the Chief Justice and Judge Pebk having each previously retired. Judge Loring, who is still enjoying a vigorous old age, dissented from the judgment; and ill-health has deprived us of Judge Nott’s assistance during the whole of this term.
- The report of the House committee to which we have referred was adopted verbatim by the Senate committee as a reason for the passage of the bill which was recommended and passed. It- explains the purposes of Congress in this unusual legislation. It reviews the case. It affirms that the evidence shows that the court made a mistake of $14,016.34. It declares that nowhere in the evidence can any testimony be found to support a judgment of $34,225.14, and it asserts that Chief Justice Casey was of opinion that there was an error in the amount of the judgment, that it should have been for $47,000, and that the error arose from adopting Frazer’s prior estimate, instead of the actual calculation which he gave with his testimony.
The committees of Congress having reached these positive conclusions as to the effect of this evidence, the act which they recommend, and which passed, directs this court to examine it, and, if we shall be of opinion that there was an error in the judgment against the claimant, to correct the error, provided the correction shall not exceed the sum stated in the act-.
We cannot say with the committee that, there was no evidence upon which the judgment could be rendered; on the other hand, in the conflicting proof, there is abundant evidence to support a judgment for the further amount indicated by the act; and we are of opinion that so far as the judgment actually rendered rested on Frazer’s report to the Department, it had no foundation in the evidence. -
As to the second subject referred to us, there is convincing internal evidence in the proof that the court intended-to adopt the views of Mr. Frazer, and that it did practically adopt the views which he expressed in his letter to the Department. The report of the committees to the houses of Congress goes further, and assumes as a proved fact that the court intended to adopt the views expressed by Frazer in his evidence, and by mistake *740 took those stated in his letter. Still further, the committee stated to Congress the sources from which they derived this conviction, viz, that Chief Justice Casey had so stated in a form which the committee accepted as truth. On this report they recommended the passage of the accompanying bill, and Congress adopted their views and enacted it.
This act directs us to ascertain the intent of the parties from the evidence. We may not inquire what Chief Justice Casey or Judges Peck or Milligan in their lifetime said of it. We are not empowered under the terms of this act even to ask Judge Nott, if he were here, what his intent was when he assented to that judgment. We cannot turn to Judge Loring for information, not only because the statute does not permit it, but also because he dissented and took no part in the judgment. We must determine this delicate fact from the old record alone.
If there were no conflict of evidence as to the value of this extra work, and the court had by clerical error rendered a judgment for a wrong amount, the evident intent of Congress by the passage of such an act would be this: to have this court pass upon the evidence and enter a judgment in accordance with its own convictions. But such'is not this case.
This court is directed to ascertain the intent of four judges ten years since, not in a matter where there is a palpable clerical error, but in a matter in which those judges exercised their discretion in weighing and balancing conflicting evidence; and it is forbidden to seek information on the point to be adjudicated from the only sources of absolute knowledge. If, therefore, we cannot learn the purposes of Congress from the recommendations of its committees on which its action is based, but one answer can be given to the question put to us: The only proof of the intent of the judges is in the judgment they rendered ; and, even if we should derive a different result from weighing the proof, we could not say that they intended to estimate it as we do.
This answer is so natural, so obvious, so inevitable, that Congress never could have intended to send this case here to receive it. The reports of their committees upon which they based their action show exactly what they did intend. They were led to believe by the declarations of Chief Justice Casey that an error had been inadvertently committed by which the claimant had been injured and the intent of the court had been *741 frustrated. They did not feel willing, or perhaps competent, to go through the record «and ascertain whether it conformed with the recollections of Chief Justice Casey. They did not care to right the claimant’s alleged wrongs till that' should be done; and they sent the case here for that purpose.
Construing the act in this light, we think we must limit ourselves to inquiring whether the evidence shows anything inconsistent with the conclusions which Congress derived from the committees’ reports. We cannot say that it does; on the contrary, as we have already said, there is in this conflicting evidence proof to sustain those conclusions.
On both points we have felt constrained to find for the claimant. We think it proper to add .that.our findings are not to be ■taken as evidence of the conclusions which we should have reached had the action" of Congress left a larger measure of discretion to the court. We express no opinion on the general merits of this controversy.'
The judgment of the court is that the claimants recover of the defendants the sum of 14,016.29.